JOHN BRAKEBILL, plaintiff in error, *vs.* A. J. LEONARD *et al.*, defendants in error.

An action was brought by the plaintiff against the defendants for wrongfully depriving him of a mule and seventeen gallons of syrup, in the year 1864, and the defence set up was, that the defendants took the property from the plaintiff when acting under orders of the officers of the Confederate Military Government, and the Court dismissed the case, on its own motion, without giving the plaintiff an opportunity to go before the jury and have the question of fact tried by them, whether the defendants were, at the time of the seizure of the property, *bona fide* acting under military orders, or not: *Held*, that it was error in the Court to dismiss the plaintiff's case in the manner stated in the record, that the Court should have submitted the evidence to the jury, and charged them as to the law applicable to the facts proved on the trial.

*Held*, also, that the certified copy orders of the military authorities of the Confederate States, were properly admitted in evidence on the trial of the case.

Military Captures.    Practice.    Before Judge PARROTT. Murray Superior Court.    October Term, 1869.

In June 1866, Brakebill brought case against Leonard and five other named persons, averring that on the 29th of December, 1864, they took from him, by force, without lawful warrant or authority, fraudulently and without his consent, a three year old mule, worth $150 00, one barrel and seventeen gallons of syrup, worth $16 00, and a halter, worth $5 00, to his damage, etc. The defendants were served, pleaded the general issue, and in January 1868 the cause was put upon the appeal, by consent.

On the trial, BRAKEBILL testified that on said day in December, 1864, he was *en route* for Cleveland, Tennessee, with

Brakebill *vs.* Leonard *et al.*

some syrup to exchange for salt and other family supplies, was overtaken by said defendants, (except Leonard,) was asked where he was going, and he said, "to mill;" they passed on and returned and told him they had orders to arrest persons trading with the Federals, and that they believed he was going to them; he then admitted that he was going there, they arrested him and took him to the headquarters of Leonard, who was Captain of a company of Confederate soldiers.   He was kept under arrest till next morning, and then told by Leonard that they had concluded to take what he had and let him go, upon his giving security not to trade again with the Federals.   He gave the security and importuned Leonard not to take all he had, and Leonard let him keep one mule and his wagon, and kept the other mule, seventeen gallons of syrup and said halter.   He testified, also, as to the value of the articles kept by Leonard.

A person who was arrested with Brakebill testified to the same facts, and plaintiff rested his cause.

One of the defendants testified that the suspicion against Brakebill was excited by his having trunks in his wagon, that they arrested him under certain orders, which, while he had not seen them, he knew by common report.   It was shown that Leonard was a Captain under General Wheeler, and that these defendants were of Leonard's command; it was, also, shown that orders issued in November, 1864, for Wheeler's men to leave North Georgia and join him, but that there was difficulty in sending orders through at that time, and it was not known whether Leonard had received this order.

General WHEELER testified by interrogatories, to which he appended copies of orders, which, he said, he received from General Beauregard.   In one of these, dated 22nd October, 1869, and received by him 18th November, 1869, he was ordered among other things for him to do in North Georgia, "should the enemy advance anywhere, you will drive off all the stock in their front."   Another, dated 18th November, 1869, ordered him to employ his cavalry "to best advantage, retarding advance of Sherman's army and destroying supplies in his front;" * * and to consume and destroy all sup-

plies within his reach.   By another, dated 28th November, 1864, Wheeler was notified that eight hundred dismounted Cavalry would report to him that night, and he was ordered to mount them "as rapidly as possible, by capture or impressment, and use them to the best advantage."   Plaintiff's counsel objected to the reading of these copy orders, as evidence, but the objection was overruled and they were read with General Wheeler's evidence.   His evidence amounted to this: that, if Leonard acted upon and within these orders, he was so acting by military order.

At this stage of the proceeding, before defendants had closed their testimony, the Judge remarked that "the old man Brakebill had been badly treated, but he might charge it to the war," and announced the case dismissed, without any motion from defendant's counsel.   In the bill of exceptions, he says he did so "because it appeared that the property was taken in obedience to the orders of superior officers, and in accordance with the practice of soldiers in each army during the war, and because it was a useless waste of time to pursue a fruitless investigation."   Judgment for costs was entered against plaintiff.   His counsel complain at said dismissal and judgment, and at the allowance of said copy orders as evidence.

R. J. McCAMY, W. LUFFMAN, for plaintiff in error, as to secondary evidence, cited 6th Ga. R., 188; 9th, 417; 13th, 406; 14th, 185; Irwin's Code, section 3714; there being evidence for plaintiff, the cause should have gone to the jury; 15th Ga. R., 491; 20th, 480.

J. A. W. JOHNSON, for defendants, relied upon the Act of ———.   See Acts 1865–6, page 245.

WARNER, J.

The duly certified copy orders of the military authorities of the Confederate States were properly admitted in evidence on the trial of the case.

In our judgment, it was error in the Court below, in dis-

missing the plaintiff's case in the manner stated in the record. The Court should have submitted the evidence to the jury, and charged them as to the law applicable to the facts proved on the trial. It was the plaintiff's legal right to have had the question of fact determined by the jury under the law, whether the defendants, at the time of the seizure of his property by them, were, *bona fide,* acting under the military orders of a superior officer or not.

Let the judgment of the Court below be reversed.